**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DAVID BETTS,

    Plaintiff Counterclaim Defendant - Appellant,

v.

WORK ZONE TRAFFIC CONTROL, INC., a Colorado corporation,

    Defendant Counterclaimant - Appellee.

No. 18-1199
(D.C. No. 1:16-CV-01890-CMA-MJW)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

David Betts, proceeding pro se,[1] appeals the district court's grant of summary judgment to his former employer, Work Zone Traffic Control, Inc., in his suit for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Although Betts is proceeding pro se in this appeal, he was represented by counsel below. So we construe his appellate filings liberally, but do not afford the same liberal construction to counsel's filings in the underlying case. *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994).

retaliation in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3). Exercising jurisdiction under 28 U.S.C. § 1291, we reverse.

## I. Background

Work Zone employed Betts as a full-time Traffic Control Supervisor for more than eight years. His job duties included loading signage and equipment on to company trucks, driving to job sites, and unloading and placing equipment at job sites according to written traffic control plans. For most of those years, Betts worked as a nonexempt employee under the FLSA and received time-and-one-half for hours worked over 40 hours in a single work week.

In April 2015, Work Zone reclassified Betts as a salaried employee, which meant he received no overtime pay. Betts objected to this classification. When Work Zone refused to pay him overtime, he hired an attorney who, in September 2015, sent Work Zone a demand letter. In December 2015, the parties reached a settlement under which Work Zone reclassified Betts as a nonexempt hourly employee and paid him overtime amounts he claimed.

In May and June 2016, Work Zone assigned Betts to the Marksheffel Road job site in Colorado Springs, Colorado. During the week of May 22-28, 2016, the company assigned him to work a double shift, for which he claimed 92 hours of pay, including 52 hours of overtime. This prompted Work Zone to review Betts' timesheet and the GPS for the company truck he was driving and determine Betts was claiming hourly pay for drive time between his home in Pueblo, Colorado and the

Marksheffel Road job site.  Work Zone paid Betts in full for the week ending May 28, 2016.

According to Work Zone's Drive Time Policy and its official rules for claiming mileage, employees do not receive hourly pay for the drive from their homes to job sites.  Instead, Work Zone pays them 10 cents per mile.  But the company pays employees hourly for drive time at the beginning of a project when they haul equipment to set up a new job and at the end of a project when they pick up a completed job.  Work Zone also pays by the hour when workers return to an existing job site if they are hauling additional equipment—more than a few cones or a sign—needed for the project.

During the week of May 29-June 4, 2016, Betts claimed 59 hours of pay, including 19 hours of overtime.  Work Zone did not pay Betts for 15 hours of overtime.  On June 10, 2016, Betts called Work Zone owner, John Volk, to complain about the 15 hours missing from his paycheck.

During the week of June 5-11, 2016, Betts claimed 75.5 hours of pay, including 35.5 hours of overtime.  On June 15, 2016, Volk sent Betts the following text:

> Hey Betts, no more weekend time for paperwork and shop stuff make sure and get that done daily when your working!  Also make sure if you are scheduled to work Sat you check with [Work Zone Managers] Mike and David as to whom is available and who had the least amount of hours will work.
>
> Then on the message Boards make sure if you have several to move around you get assistance working overtime for 7 hrs to move message boards at night buy yourself is not acceptable. If it was down for 5 weeks

> we should be getting it done during normal working hours. That time like discussed is not billable time to our customers so it comes out of Wz pocket which in turn cost us to much money. Please try and maintain better time management and make sure we are keeping the hours down as much as possible.
>
> Thanks
> Jv

R. Vol. 3 at 528-29.

Betts claimed 72.25 hours of pay per week for each of the next two weeks—June 12-18, 2016 and June 19-25, 2016—which included drive time between his home and job site and replacing a headlight on his company truck at the shop on a Sunday.

The morning of June 29, 2016, Betts said the following in a text to Bob Andrews, a Work Zone safety manager:

> I hate to tell you Bob. But life short I'm getting ready to go round two with JV he arbitrary three weeks ago took 15 hours off my weeks time sheet I can't find where this 15 hrs are extra He's going to have to prove it. I hope he's wright. Pray for me.
>
> Thanks.

R. Vol. 4 at 193. That same afternoon, Work Zone terminated Betts' employment. The "Explanation of Violation" on the Employee Termination Form given to Betts contains a single word: "Insubordination." R. Vol. 3 at 536. Work Zone eventually paid Betts for all the disputed hours he claimed for the week ending June 4, 2016.

Betts sued under the FLSA alleging that Work Zone terminated his employment in retaliation for complaining that Work Zone failed to pay him for all the hours he worked during the week ending June 4, 2016. He also claimed the

4

company fired him because he hired a lawyer and demanded payment for unpaid overtime in September 2015. Work Zone counterclaimed for civil theft, conversion, and unjust enrichment, based on Betts' claiming drive time between his home and job site.

The district court granted summary judgment to Work Zone on Betts' FLSA claim. Betts sought to appeal this summary judgment ruling in 2017, but we dismissed the appeal for lack of jurisdiction because Work Zone's counterclaims remained pending. *See Betts v. Work Zone Traffic Control, Inc.*, No. 17-1463 (10th Cir. Mar. 7, 2018).

Work Zone dismissed its counterclaims without prejudice, and Betts filed this appeal. But a dismissal without prejudice of the remaining claims in a multi-claim action does not render a judgment final. *Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998). After we notified Betts of the still existing jurisdictional defect, Betts moved the district court to enter final judgment pursuant to Federal Rule of Civil Procedure 54(b). The district court certified its summary judgment ruling under Rule 54(b), which gave us jurisdiction under 28 U.S.C. § 1291 to review the district court's grant of summary judgment to Work Zone on Betts' FLSA claim. *See Lewis v. B.F. Goodrich Co.*, 850 F.2d 641, 645 (10th Cir. 1988).

## II. Discussion

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1201 (10th Cir. 2004). Summary judgment is appropriate if the

moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the record and all reasonable inferences from it, in a light most favorable to the party opposing summary judgment. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1392 n.2 (10th Cir. 1997).

Under the FLSA, it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). When a plaintiff cannot provide direct evidence of retaliation, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Conner*, 121 F.3d at 1394. Under this framework,

> a plaintiff must first establish a prima facia case of retaliation. The burden then shifts to the employer to offer a legitimate [nonretaliatory] reason for the plaintiff's termination. Once the employer offers such a reason, the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.

*Id.* (internal citation and quotation marks omitted).

To establish a prima facie claim for retaliation under the FLSA, a plaintiff must show (1) he engaged in activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with that activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. *Id.*

The district court concluded that Betts established a prima facie claim for retaliation. First, the court found Betts engaged in protected activity when he called Volk on June 10 to complain about the 15 hours missing from his June 4 paycheck.[2] Second, the court noted the parties did not dispute that Betts suffered an adverse employment action when Work Zone terminated him on June 29. Finally, the court concluded that the temporal proximity between Betts' June 10 complaint and June 29 termination sufficiently established a causal connection between Betts' protected activity and his termination. Thus, the burden shifted to Work Zone to offer a legitimate, nonretaliatory reason for the termination.

The district court concluded that Work Zone proffered a legitimate, nonretaliatory reason for terminating Betts—"insubordination because [Betts] disregarded company drive time policies and defied Mr. Volk's June 15 text instructing [Betts] not to perform overtime shop work during weekends." R. Vol. 4 at 369. The court then determined that Betts failed to provide sufficient evidence from which a rational jury could conclude Work Zone's stated reason was pretextual. We discuss each of these determinations in turn.[3]

---

[2] The court also suggested that Betts' text expressing his intent to "go round two" with Volk could also constitute protected activity under the FLSA.

[3] We do not review the district court's determination that Betts established a prima facie case because Work Zone has not argued, as an alternative basis for affirming the summary judgment in its favor, that the district court erred in this determination, and we will not craft arguments for a party. *See Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) (declining to consider whether there was an alternative basis to affirm where the appellee failed to develop an argument for affirming on an alternative basis).

### A. *Work Zone's Proffered Reason for Terminating Betts.*

The Supreme Court has described the defendant's burden under the *McDonnell Douglas* framework as follows:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of [retaliation] by producing evidence that the plaintiff was [terminated] . . . for a legitimate, non[retaliatory] reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff. To accomplish this, the defendant must clearly set forth, *through the introduction of admissible evidence*, the reasons for the plaintiff's [termination]. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981) (emphasis added and internal citation and footnotes omitted) (modified to reflect the retaliation terminology applicable to this suit).

The district court accepted Work Zone's contention that it terminated Betts for "insubordination *because* [Betts] disregarded company drive time policies and defied Mr. Volk's June 15 text instructing [Betts] not to perform overtime shop work during weekends." R. Vol. 4 at 369 (emphasis added). But Work Zone offered no evidence

on the *nature* of Betts' insubordination.[4] For example, Work Zone did not offer an affidavit or deposition testimony from John Volk, or anyone else involved in the decision to terminate Betts, identifying how Betts was insubordinate. Work Zone articulated the nature of Betts' insubordination in its answer to Betts' complaint and its motion for summary judgment. But, "[a]n articulation not admitted into evidence will not suffice. . . . [T]he defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Burdine*, 450 U.S. at 255 n.9. The only *evidence* cited by the district court was the Employee Termination Form containing only the single word "insubordination." *See* R. Vol. 4 at 369 (citing Doc. No. 16, Work Zone's Answer, Doc. No. 48-4, which does not exist, and Doc. No. 48-3, the Employee Termination Form).

Insubordination can serve as a legitimate nonretaliatory reason for discharge to rebut a prima facie case. *See Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984). Even so, the generic term "insubordination," without evidence identifying the act of insubordination, is inadequate to satisfy Work Zone's burden. *See Whatley v. Skaggs Cos.*, 707 F.2d 1129, 1135 n.4 (10th Cir. 1983) (noting that *Burdine* requires the defendant's *evidence* regarding its reason for the plaintiff's dismissal to be reasonably specific); *accord, e.g.*, *DePaula v. Easter Seals*

---

[4] Work Zone's reliance on Betts' deposition testimony is misplaced. At his deposition, Betts repeatedly denied Work Zone told him it was terminating him for violating the Drive Time Policy, and he repeatedly stated that Work Zone did not explain his termination beyond giving him the Employee Termination Form containing the word "insubordination."

*El Mirador*, 859 F.3d 957, 972-73 (10th Cir. 2017) (noting the termination letter recounted performance issues); *Bird v. W. Valley City*, 832 F.3d 1188, 1201 (10th Cir. 2016) (considering decisionmaker's deposition testimony about plaintiff's insubordination); *Brown*, 746 F.2d at 1411 n.5 (considering affidavit evidence about the plaintiff's insubordination).

To support its articulated reason for the discharge, Work Zone must rely on an inference: because Volk sent Betts a text two weeks earlier directing him to practice better time management and not to perform shop work on weekends, "insubordination" must refer to defiance of that directive. But we do not draw inferences in favor of the *moving* party on summary judgment. Betts sent Work Zone safety manager Bob Andrews a text the morning Work Zone terminated him, saying he was getting ready to "go round two with JV" in a second FLSA complaint for unpaid overtime. One could also infer that "insubordination" referred to Betts' threat to "go round two" with Volk by challenging the refusal to pay overtime.[5]

The defendant's burden under the *McDonnell Douglas* framework at summary judgment is "exceedingly light." *DePaula*, 859 F.3d at 970 (internal quotation marks omitted). It need not persuade the court that its articulated reason for the termination is true. *Id.* But it must produce admissible evidence of the articulated reason

---

[5] Work Zone argued to the district court that Betts offered no evidence that John Volk knew Betts sent the text to Andrews. We mention Betts' text to highlight the problem with Work Zone's inference: the word "insubordination," alone, does not necessarily reflect a nonretaliatory reason. And Work Zone, not Betts, had the burden of producing evidence at this stage of the *McDonnell Douglas* analysis.

10

sufficient to raise a genuine issue of material fact as to whether it retaliated against the plaintiff. *Id*. As the moving party, Work Zone cannot rely on inferences to meet its burden. Because Betts presented a prima facie case sufficient to survive summary judgment, and Work Zone did not produce sufficient evidence to rebut Betts' prima facie case and shift the burden back to Betts, the district court should have denied Work Zone's motion for summary judgment at this point.

### B. Betts' Evidence of Pretext.

Even assuming Work Zone produced sufficient evidence of a legitimate nonretaliatory reason to shift the burden to Betts, we conclude Betts produced sufficient evidence of pretext to survive summary judgment.

A plaintiff can withstand a motion for summary judgment by demonstrating "a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). A plaintiff can make this showing with a variety of evidence, including evidence: (1) "that the defendant's stated reason for the adverse employment action was false," (2) "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances," or (3) "that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). "A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated

11

differently from other similarly-situated employees who violated work rules of comparable seriousness." *Id.*

In response to Work Zone's motion for summary judgment, Betts argued that Work Zone's reason for terminating him (1) was false because he had not defied Volk's directive not to perform shop work on weekends and he had not violated Work Zone's Drive Time Policy and (2) contradicted Work Zone's established drive time practices and Work Zone had not terminated other employees who claimed drive time like Betts.

The district court determined that Betts failed to respond adequately to Work Zone's stated reason for his termination indicating, "it is undisputed that Mr. Volk sent [Betts] a text on June 15 instructing [him] not to perform shop work during weekends," R. Vol. 4 at 369, and "[i]t is also undisputed that [Betts] defied Mr. Volk's instruction by, among other things, performing work at the Pueblo shop on a Sunday four days after receiving the text," *id.* at 370.[6] This is not an accurate statement of the evidence before the district court.

*1. Volk's Directive Not to Perform Shop Work on Weekends*

Betts offered evidence that he did not defy Volk's directive not to perform shop work on weekends. The only specific instance of shop work on a weekend identified by either Work Zone or the district court was one hour on Sunday, June 19, 2016. Betts testified at his deposition that he went to the shop in Pueblo on Sunday,

---

[6] The district court did not specifically address Work Zone's Drive Time Policy.

12

June 19, 2016, to change a headlight on his company truck. He testified this was not shop work; it was vehicle maintenance. He offered Work Zone's policy on the use of its trucks, which provides, "All scheduled maintenance and repairs shall be performed as soon as possible. Any failures, concerns, questions or problems with the truck or any of the truck's equipment should be reported to the employee's superior **IMMEDIATELY**." R. Vol. 4 at 194 (emphasis in original). Betts testified that he told his general manager, David Ranney, about the headlight, and Ranney told him to get it fixed. Betts' timesheet for June 19, 2016, reflects that Betts went to the Pueblo shop to "replace [a] head lite." R. Vol. 3 at 504. Betts offered sufficient evidence to create a genuine issue of material fact regarding whether Work Zone's claim that it terminated him for performing shop work on a weekend was pretextual.

2. *Work Zone's Drive Time Policy*

As noted, Work Zone's Drive Time Policy allows employees to claim an hourly rate for drive time when they are hauling equipment to set up a job site and after picking up a site. In addition, its mileage rules allow employees to claim an hourly rate (rather than mileage) for drive time when they are hauling additional equipment needed for a job "and it's more than a few cones or a sign." *Id.* at 458. Betts testified at his deposition that he charged hourly for his drive to and from the Marksheffel Road job site when he was hauling equipment needed for the job and it was more than a few signs and cones. He also testified that, sometimes, he would haul cones and signs from the Marksheffel Road job site, south to his home in Pueblo so he could set them back up the next morning on his way north. He testified that the

13

crew set up cones and signs starting at the southern end of the project, and this was more efficient than driving to the Marksheffel Road equipment yard at the end of the day, unloading the cones and signs, driving home to Pueblo, then driving back to the equipment yard the next morning to pick up the necessary equipment before heading to the southern end of the project again to set up. Betts understood this to comply with Work Zone's Drive Time Policy.

In considering whether the employer's proffered reason is pretextual, "we examine the facts as they appear to the person making the decision; we do not look to the plaintiff's subjective evaluation of the situation." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis and citations and internal quotation marks omitted). Thus, Betts' subjective view about whether his timekeeping violated Work Zone's policy does not demonstrate a genuine dispute regarding pretext. That said, Betts also offered evidence that his timekeeping followed Work Zone's established practices for claiming drive time. For example, Betts offered evidence that he had been claiming drive time the same way for years, including the months in 2015 that were the subject of his September 2015 FLSA complaint, for which Work Zone eventually paid all the overtime he claimed. He offered evidence that Work Zone paid other Traffic Control Supervisors drive time who claimed it on their timesheets, even when their timesheets did not reflect that they were hauling equipment. Finally, Betts argued that the fact that Work Zone imposed different drive time rules on him after he complained about the 15 hours deducted from his

June 4 paycheck is evidence that he was treated differently than other Traffic Control Supervisors after he complained.

Betts' evidence creates a genuine issue of material fact as to whether Work Zone's reason for terminating him was worthy of belief. The district court erred in concluding that he had not offered sufficient evidence of pretext.

### III. Conclusion

For these reasons, we REVERSE the district court's order granting summary judgment to Work Zone on Betts' FLSA claim, and REMAND this matter to the district court for further proceedings consistent with this decision.

    Entered for the Court


    Joel M. Carson III
    Circuit Judge